IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RICHARD SCHICKER,

        Plaintiff,

vs.

CYNTHIA KLENDA,

        Defendant.

8:20-CV-02

MEMORANDUM AND ORDER

        This case comes before the Court on Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). Filing 6. The Court finds that Plaintiff has failed to state a claim upon which relief can be granted because his tortious-interference claim is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, and because there is no private right of action for his claims under the Nebraska Unfair Insurance Trade Practices Act, Neb. Rev. Stat. §§ 44-1521–35 (Reissue 2010). Accordingly, the Court grants Defendant's Motion to Dismiss.

### I.    BACKGROUND[1]

        This case arises out of the payment of benefits under a life-insurance contract administered by defendant Cynthia Klenda's employer, Lincoln Financial Group. Filing 1-2 at 3. Plaintiff, Richard Schicker, is a Nebraska attorney. Filing 1-2 at 2. In September 2017, an individual named Brandi Cady retained Schicker to represent her in seeking life insurance benefits from Lincoln Financial Group following the death of her spouse. Filing 1-2 at 2. At the time Cady hired Schicker, Lincoln Financial Group was refusing to pay the benefits she sought. Filing 1-2 at 2. Under Cady

---

[1] Although some of the facts recited herein may be disputed by Defendant, when deciding a motion to dismiss, the Court "must accept a plaintiff's factual allegations as true" and make all reasonable inferences in favor of the nonmoving party. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

and Schicker's contract, Schicker was to receive 40% of the amount Cady recovered from Lincoln Financial Group. Filing 1-2 at 2.

Shortly after being retained by Cady, Schicker attempted to contact Lincoln Financial Group employee Kara Vincent to notify her of his representation of Cady. Fling 1-2 at 2. Vincent returned Schicker's phone call four days later and offered to settle Cady's claim for $130,000. Filing 1-2 at 2-3. Schicker immediately communicated the offer to Cady. Filing 1-2 at 3. Schicker told Vincent that he felt there was no legally valid reason not to pay the full policy amount of $200,000 and that he would seek to have Lincoln Financial Group pay his attorney fees for having to initiate a claim. Filing 1-2 at 3.

Two days later, Klenda contacted Cady directly. Filing 1-2 at 3. During this phone call, Klenda agreed to pay Cady the full policy limits, and Cady accepted. Filing 1-2 at 4. Schicker alleges this phone call "was outside the scope of [Klenda's] employment with Lincoln Financial Group as violating the law . . . and industry codes of conduct is not within any employee's scope of employment." Filing 1-2 at 2. In a follow-up email to Cady, Klenda stated, "[S]ince we are working together to get this claim completed . . . you do not need an attorney to work with us to get this claim paid." Filing 1-2 at 4 (emphasis removed). Klenda also emailed Cady a beneficiary statement so that Cady could direct how she would be paid. Filing 1-2 at 4.

Cady informed Schicker of her settlement with Lincoln Financial Group and provided him with copies of Klenda's emails commemorating the agreement. Filing 1-2 at 4. Schicker gave Lincoln Financial Group written notice that he sought to impose an attorney's lien on the policy proceeds, but Lincoln Financial Group paid the entire policy directly to Cady. Filing 1-2 at 4. Schicker alleges Klenda's "[p]aying of a claim when attorneys lien existed is outside the scope of [her] employment and in violation of Nebraska law." Filing 1-2 at 4.

Schicker filed suit against Klenda in the District Court of Douglas County, Nebraska. Filing 1-2 at 1. Schicker alleged Klenda had "tortuously [sic] violated [his] contract with Cady as [Klenda] actively lured Cady into violating the written contract with Plaintiff and then not honoring the attorneys lien." Filing 1-2 at 4. Schicker also alleged Klenda violated two sections of the Nebraska Unfair Insurance Trade Practices Act by making deceptive statements in violation of Neb. Rev. Stat. §§ 44-1525(2) & (10). Filing 1-2 at 5. Schicker sought 40% of the proceeds paid to Cady, plus costs and interests. Filing 1-2 at 5.

Klenda filed a Notice of Removal to this Court, asserting jurisdiction under 28 U.S.C. § 1331 because Schicker's claims arose out of an employee welfare benefit plan and were therefore governed by ERISA. Filing 1 at 2. Schicker did not oppose removal.[2] Klenda also filed a Notice of Related Case, stating that the case involved the same legal issues and arose out of the same factual circumstances as this Court's prior order in *Schicker v. Lincoln Financial Group*, No. 8:19-CV-295, 2019 WL 5579530, at *2 (D. Neb. Oct. 29, 2019) ("*Schicker I*"). In *Schicker I*, plaintiff Schicker brought similar claims of tortious interference with a contract and violation of the Nebraska Unfair Insurance Trade Practices Act against Klenda's employer, Lincoln Financial Group, for its handling of Cady's claim and payment. *Id.* at *1. The Court found that Schicker's tortious-interference claim was preempted by ERISA and that the Nebraska Unfair Insurance Trade Practices Act did not provide a private right of action. *Id.* at *4-5. Accordingly, the Court granted Lincoln Financial Group's Motion to Dismiss for failure to state a claim and dismissed Schicker's complaint. *Id.* at *5.

---

[2] The Court concludes removal was proper. *See Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992) (noting that removal jurisdiction is "entirely a creature of statute" and therefore, "[i]f one of the statutory requirements [for removal] is not met, the district court has no jurisdiction"); *see also* 28 U.S.C. § 1446 (procedure for removal). Because Schicker's claims are governed by ERISA, a federal law, this Court has federal-question jurisdiction over this action. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Klenda has now filed a Motion to Dismiss Schicker's claims in the present case, arguing, similarly to *Schicker I*, that the tort claim is preempted by ERISA and that the Nebraska Unfair Insurance Trade Practices Act does not provide a private right of action. Filing 7 at 2-3.

## II. DISCUSSION

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

## B. ERISA Preemption of the Tortious-Interference Claim

Klenda first argues that Schicker's claim of tortious interference with a contract fails to state a claim upon which relief can be granted because it is preempted by ERISA. Filing 7 at 2-3. Klenda argues the Court's reasoning in *Schicker I* should apply in equal measure to the preemption issue in this case. Filing 7 at 3. Schicker responds that his tortious-interference claim is distinguishable because he has alleged Klenda was acting outside the scope of her employment, an issue not raised in *Schicker I*. Filing 8 at 3-4.

As the Court set forth at length in *Schicker I*, "ERISA is a comprehensive legislative scheme that includes an integrated system of procedures for enforcement that are essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Moore v. Apple Cent., LLC*, 893 F.3d 573, 576 (8th Cir. 2018) (quoting *Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098, 1101 (8th Cir. 2017)). ERISA contains a preemption provision which states its enforcement provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." 29 U.S.C. § 1144(a); *Treasurer, Trs. of Drury Indus., Inc. Health Care Plan & Tr. v. Goding*, 692 F.3d 888, 897 (8th Cir. 2012). "The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1).

"Congress intended courts to read this [preemption] provision broadly, in order to protect ERISA's 'uniform regulatory regime over employee benefit plans.'" *Goding*, 692 F.3d at 897 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004)). "A State law 'relates to' an ERISA plan and is preempted if it has 'a connection with or a reference to such a plan.'" *Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 728 (8th Cir.

2017) (quotation marks omitted) (quoting *Express Scripts, Inc. v. Wenzel*, 262 F.3d 829, 833 (8th Cir. 2001)). This means that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Moore*, 893 F.3d at 576 (quoting *Davila*, 542 U.S. at 208–09, 124 S. Ct. 2488).

In *Schicker I*, the Court relied on case law finding claims for state-law torts, such as a tortious-interference claim predicated upon plan benefits, "relate to" an employee benefit plan and are therefore preempted by ERISA. 2019 WL 5579530, at *3 (citing *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771-72 (8th Cir. 2006); *Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000)); *Painters Dist. Council No 58 v. RDB Universal Servs., LLC*, No. 4:14CV01812 ERW, 2016 WL 1366600, at *12 (E.D. Mo. Apr. 6, 2016); *Jump v. Speedway LLC*, 23 F. Supp. 3d 1024, 1029-30 (D. Minn. 2014); *Schoedinger v. United Healthcare of the Midwest, Inc.*, No. 4:07CV904SNLJ, 2011 WL 97735, at *7-8 (E.D. Mo. Jan. 12, 2011)). In contrast, courts find state-law actions are not preempted by ERISA only when the tort involves a merely tangential connection to the employee benefit plan. *See, e.g.*, *Bannister v. Sorenson*, 103 F.3d 632, 635 (8th Cir. 1996) (stating that state actions which are "too tenuous, remote, or peripheral" to warrant preemption would include "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" (citation omitted)).

Here, Schicker's claim against Klenda arises out of her employer's payment of benefits under an employee benefit plan. *See generally* Filing 1-2. Schicker takes issue with Klenda acting outside the scope of her employment by communicating directly with Cady and authorizing the payment directly to Cady rather than to Schicker as her attorney. Filing 1-2 at 3-4. As an initial matter, the Court is skeptical that Schicker's claim that Klenda was acting outside the scope of her

employment carries any weight. "In determining whether conduct falls within an employee's scope of employment, the Nebraska Supreme Court has used the Restatement (Second) of Agency (1958) for guidance." *Pearce v. Werner Enters., Inc.*, 116 F. Supp. 3d 948, 953 (D. Neb. 2015). It provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master, and
>>
>> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958). Klenda's administration of plan benefits appears to be precisely the type of work she was employed by Lincoln Financial Group to perform, and her resolution of Cady's claim appears to have occurred substantially within the authorized time and space limits and to have been actuated by a purpose to serve her employer.

However, the Court need not decide whether Klenda was acting outside the scope of her employment. Schicker's allegation in this respect does not change the fundamental nature of his claim as one "relating to" an ERISA plan under the preemption provision, 29 U.S.C. § 1144(a). Schicker was representing Cady on a claim for life-insurance benefits governed by ERISA. The fact that one particular employee of Lincoln Financial Group (Klenda) authorized payment of the plan benefits and that Schicker alleges she did so outside the scope of her employment does not change the nature of the claim or the fact that it relates to an employee benefit plan. Stated another

7

way, "the essence of [Schicker]'s claim relates to the administration of plan benefits." *Parkman*, 439 F.3d at 771-72. It is therefore preempted.

Furthermore, to the extent Schicker seeks attorney fees, his claim is a "state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy . . . and is therefore pre-empted." *Moore*, 893 F.3d at 576 (quoting *Davila*, 542 U.S. at 208–09, 124 S. Ct. 2488). The civil enforcement statute provides for the recovery of attorney fees "[i]n any action under this subchapter." 29 U.S.C. § 1132(g)(1). The Eighth Circuit interpreted the phrase "any action" to refer solely to an action initiated in court, and thus concluded that ERISA's attorney-fee provision "does not extend to pre-litigation administrative proceedings." *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1011 (8th Cir. 2004). In *Parke*, the plaintiff was denied attorney fees incurred during her request for administrative review of her denial of benefits prior to filing suit. *Id.* at 1003. Similarly, Schicker is requesting attorney fees for the pre-litigation correspondence he engaged in with Klenda on Cady's behalf. Schicker's attempt to recover pre-litigation attorney fees under an alternate, state-law theory in contravention of ERISA's civil enforcement statute is preempted. Accordingly, Schicker's allegation of tortious interference with a contract fails to state a claim upon which relief can be granted.

### C. Nebraska Unfair Insurance Trade Practices Act

Schicker's Complaint can also be read as setting forth a cause of action under the Nebraska Unfair Insurance Trade Practices Act. Schicker argues that Klenda's contact with Cady violated Neb. Rev. Stat. § 44-1525(2) (Reissue 2010) (prohibiting making a statement which is untrue, deceptive, or misleading in the business of insurance) and Neb. Rev. Stat. § 44-1525(10) (Reissue 2010) (prohibiting making a false or fraudulent statement for the purpose of obtaining money or a benefit in the business of insurance).

8

The Court need not reach the issue of whether ERISA preempts the Nebraska Unfair Insurance Trade Practices Act because, as plainly set forth in *Schicker I*, 2019 WL 5579530 at *5, the statutes in question do not afford Schicker a private right of action. *See McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 928 (8th Cir. 2017) ("The Nebraska Unfair Insurance Trade Practices Act 'does not contemplate private suits, but instead vests powers and duties in the State Director of Insurance, who is empowered to enjoin and penalize certain prohibited acts.'" (quoting *Allied Fin. Servs., Inc. v. Foremost Ins. Co.*, 418 F. Supp. 157, 162 (D. Neb. 1976))). Accordingly, Schicker cannot state a claim upon which relief can be granted under the Nebraska Unfair Insurance Trade Practices Act.

### III.    CONCLUSION

For the foregoing reasons, the Court finds Plaintiff has failed to state a claim upon which relief can be granted.

IT IS ORDERED:

1. Defendant's Motion to Dismiss (Filing 6) is granted;
2. Plaintiff's Complaint (Filing 1-2) is dismissed without prejudice;
3. The Court will enter a separate judgment.

Dated this 4th day of March, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge